## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

PAUL PARSHALL, On Behalf of Himself )
and All Others Similarly Situated )
2031 Imperial Golf Course Blvd. )
Naples, Florida 34110, )
                         )
              Plaintiff, )
    v. )
                         )
ANCHOR BANCORP WISCONSIN, INC., )
25 W. Main Street )        Case No. 16-CV-120
Madison, Wisconsin 53703, )
                         )        JURY TRIAL DEMANDED
DAVID L. OMACHINSKI, )
c/o Anchor Bancorp Wisconsin, Inc., )
Registered Agent )
25 W. Main Street, )
Madison Capitol Square )
Madison, Wisconsin 53703, )
                         )
CHRIS M. BAUER, )
c/o Anchor Bancorp Wisconsin, Inc., )
Registered Agent )
25 W. Main Street, )
Madison Capitol Square )
Madison, Wisconsin 53703, )
                         )
RICHARD A. BERGSTROM, )
c/o Anchor Bancorp Wisconsin, Inc., )
Registered Agent )
25 W. Main Street, )
Madison Capitol Square )
Madison, Wisconsin 53703, )
                         )
HOLLY CREMER BERKENSTADT, )
c/o Anchor Bancorp Wisconsin, Inc., )
Registered Agent )
25 W. Main Street, )
Madison Capitol Square )
Madison, Wisconsin 53703, )
                         )
BRADLEY E. COOPER, )
c/o Anchor Bancorp Wisconsin, Inc., )
Registered Agent )
25 W. Main Street, )
Madison Capitol Square )
Madison, Wisconsin 53703, )
                         )
                         )

MARTIN S. FRIEDMAN,                          )
c/o Anchor Bancorp Wisconsin, Inc.,          )
Registered Agent                             )
25 W. Main Street,                           )
Madison Capitol Square                       )
Madison, Wisconsin 53703,                    )
                                             )
PAT RICHTER,                                 )
c/o Anchor Bancorp Wisconsin, Inc.,          )
Registered Agent                             )
25 W. Main Street,                           )
Madison Capitol Square                       )
Madison, Wisconsin 53703,                    )
                                             )
and                                          )
                                             )
OLD NATIONAL BANCORP,                        )
c/o Anchor Bancorp Wisconsin, Inc.,          )
Registered Agent                             )
25 W. Main Street,                           )
Madison Capitol Square                       )
Madison, Wisconsin 53703,                    )
                                             )
                    Defendants.

**VERIFIED CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES
AND INDIVIDUAL CLAIMS FOR VIOLATION OF SECTIONS 14(a) AND 20(a)
OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, alleges upon personal knowledge with respect to

himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to

all other allegations herein, as follows:

## NATURE OF THE ACTION

1.       This is an individual and class action brought on behalf of the public stockholders

of Anchor BanCorp Wisconsin, Inc. ("Anchor" or the "Company") against Anchor and its Board

of Directors (the "Board" or the "Individual Defendants"), to enjoin a proposed transaction

announced on January 12, 2016 (the "Proposed Transaction"), pursuant to which Anchor will be

acquired by Old National Bancorp ("Parent" or "Old National").

2.      On January 11, 2016, the Board caused Anchor to enter into an agreement and plan of merger (the "Merger Agreement").  Pursuant to the terms of the Merger Agreement, stockholders of Anchor will receive 3.5505 shares of Old National common stock or $48.50 per share in cash.

3.      The Proposed Transaction is the product of a flawed process and deprives Anchor's public stockholders of the ability to participate in the Company's long-term prospects. Furthermore, in approving the Merger Agreement, the Individual Defendants breached their fiduciary duties to plaintiff and the Class (defined herein).  Moreover, as alleged herein, Anchor and Old National aided and abetted the Individual Defendants' breaches of fiduciary duties.

4.      Compounding the unfairness of the Proposed Transaction, defendants issued materially incomplete and misleading disclosures in the Form S-4 Registration Statement (the "Registration Statement") filed with the United States Securities and Exchange Commission ("SEC") on February 17, 2016.  The Registration Statement is deficient and misleading in that it fails to provide adequate disclosure of all material information related to the Proposed Transaction.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5.      Plaintiff seeks enjoinment of the Proposed Transaction or, alternatively, rescission of the Proposed Transaction in the event defendants are able to consummate it.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Anchor common stock.

10.      Defendant Anchor is a Delaware corporation and maintains its principal executive offices at Madison-Capitol Square, 25 West Main Street, Madison, WI 53703.  The Company operates as the holding company for AnchorBank, fsb ("AnchorBank") that provides retail and commercial banking services in Wisconsin.  Anchor's common stock is traded on the NasdaqGS under the ticker symbol "ABCW."

11.      Defendant David L. Omachinski ("Omachinski") has served as a director of Anchor since 2002 and as Chairman of the Board since June 2009.  According to the Company's website, Omachinski is Chairperson of the Audit Committee and a member of the Nominating and Governance Committee.

12.      Defendant Chris M. Bauer ("Bauer") has served as a director, President, and Chief Executive Officer ("CEO") of Anchor since June 2009.

13.      Defendant Richard A. Bergstrom ("Bergstrom") has served as a director of Anchor since 1999.  According to the Company's website, Bergstrom is a member of the Nominating and Corporate Governance Committee and the Compensation Committee.

4

14.     Defendant Holly L. Cremer Berkenstadt ("Berkenstadt") has served as a director of Anchor since 1994.  According to the Company's website, Berkenstadt is a member of the Audit Committee.

15.     Defendant Bradley E. Cooper ("Cooper") has served as a director of Anchor since December 2013.

16.     Defendant Martin S. Friedman ("Friedman") is currently a director of Anchor.

17.     Defendant Pat Richter ("Richter") has served as a director of Anchor since 1992. According to the Company's website, Richter is a member of the Nominating and Corporate Governance Committee and the Compensation Committee.

18.     The defendants identified in paragraphs 11 through 17 are collectively referred to herein as the "Individual Defendants."  By virtue of their positions as directors and/or officers of Anchor, the Individual Defendants are in a fiduciary relationship with plaintiff and the other public stockholders of Anchor.

19.     Each of the Individual Defendants at all relevant times had the power to control and direct Anchor to engage in the misconduct alleged herein.  The Individual Defendants' fiduciary obligations required them to act in the best interest of plaintiff and all Anchor stockholders.

20.     Each of the Individual Defendants owes fiduciary duties to plaintiff and the other members of the Class.  The Individual Defendants are acting in concert with one another in violating their fiduciary duties as alleged herein, and, specifically, in connection with the Proposed Transaction.

21.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are continuing to violate, the fiduciary

duties they owe to plaintiff and the Company's other public stockholders, due to the fact that they have engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

22.     Defendant Parent is an Indiana corporation with its corporate headquarters located at 1 Main Street, Evansville, IN 47708.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Anchor (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of October 30, 2015, there were approximately 9,598,487 shares of Anchor common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants have breached their fiduciary duties owed to plaintiff and the Class and/or aided and abetted such breaches; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

30.     Anchor is the holding company for AnchorBank, which is a leading lender in residential housing and commercial real estate.  It provides a comprehensive suite of investment products and services to individuals and businesses through Anchor Investment Services. AnchorBank has forty-six branches across Wisconsin.

31.     The Company is positioned for future growth and success.

32.     On July 30, 2015, Anchor issued a press release wherein it announced its financial results for the quarter ended June 30, 2015.  According to the press release, the Company recorded "a strong and profitable quarter" with net income of $107.5 million compared to $6.1 million and $2.6 million for the quarters ended March 31, 2015 and June 30, 2014, respectively. Diluted earnings per share ("EPS") was $11.37 for the quarter, compared to $0.65 for the quarter ended March 31, 2015 and $0.29 per diluted share for the quarter ended June 30, 2014. According to Individual Defendant Bauer, Anchor's President and CEO: "Our strong results reflect the significant progress the Company has made in restoring profitability, capital and

improving asset quality.  We're pleased with our performance and have positioned the Company to allow for the recapture of substantially all of the deferred tax asset valuation allowance[.]" Bauer concluded, "We will continue to focus on earnings and look for sound, profitable, growth opportunities to further improve stockholder value[.]"

33.    On December 29, 2015, Anchor issued a press release wherein it announced its financial results for the quarter ended September 30, 2015.  The Company recorded a profitable quarter with net income of $15.5 million compared to $5 million for the quarter ended September 30, 2014.  Diluted EPS was $1.62 for the quarter, compared to $0.55 per diluted share for the quarter ended September 30, 2014.  With respect to the financial results, Individual Defendant Bauer commented:

> Following last quarter's excellent results, we are posting another quarter of strong financial performance. Our continued focus on loan quality improvement has warranted the reduction of our allowance for loan loss this quarter. While the reduction is significant, our loan loss reserve levels remain solid. This quarter's performance builds on over two years of profitable results and last quarter's reversal of substantially all of the deferred tax asset valuation allowance[.]

### The Flawed Process Leading Up to the Proposed Transaction

34.    The Proposed Transaction is the result of a flawed and inadequate process, and the Registration Statement provides very little detail to Anchor's shareholders regarding this process.

35.    According to the Registration Statement, on February 18, 2015, the Anchor Board met with representatives of J.P. Morgan Securities LLC ("J.P. Morgan") and discussed the Company's strategic options.  At the meeting, the Board directed Anchor management and representatives of J.P. Morgan to contact an undisclosed number of parties to gather information regarding their potential interest in a strategic transaction with Anchor.

36.     The Board apparently did not meet again regarding the Company's strategic options until July 29, 2015, when "Anchor management and representatives of J.P. Morgan reported to the Anchor board preliminary information gathered from meetings with the contacted parties." The Registration Statement fails to provide any description of the information gathered, the number of parties contacted, and whether any parties expressed interest in a potential transaction with Anchor.

37.     Nearly a month later, on August 26, 2015, the Board met to further discuss Anchor's strategic options. According to the Registration Statement, "Anchor management and representatives of J.P. Morgan reported regarding further preliminary feedback from the contacted parties." Again, the Registration Statement completely fails to provide any description of the "feedback" received or how many parties were contacted.

38.     For reasons undisclosed to Anchor's shareholders, the Board determined that "late October or early November would be an appropriate time to formally contact certain of the contacted parties to solicit their interest in a strategic transaction with Anchor."

39.     On October 26, 2015 – more than eight months after utilizing J.P. Morgan to run Anchor's strategic exploration process – the Company formally engaged J.P. Morgan to serve as its financial advisor in connection with the process.

40.     On October 28, 2015, the Board directed J.P. Morgan to contact five potential partners to solicit their interest in a strategic transaction with Anchor.

41.     Between October 29 and November 13, 2015, three of the five potential partners, including Old National, executed confidentiality agreements. The Registration Statement does not disclose whether the confidentiality agreements contained standstill and/or "don't ask, don't waive" provisions.

42.     On December 2, 2015, Anchor received written non-binding indications of interest from Old National and one other potential partner ("Party B").  The Registration Statement completely fails to disclose the terms of the indications of interest, including the amount and type of consideration offered.  The Registration Statement further fails to disclose whether Anchor made counteroffer(s) to Old National and/or Party B.

43.     On December 28, 2015, for reasons undisclosed, Party B informed J.P. Morgan that it would no longer pursue a strategic transaction with Anchor.

44.     On January 6, 2016, Anchor received Old National's final, written non-binding indication of interest, which "provided for a proposed merger consideration of $48.50 per share and a consideration mix of 60.0 percent Old National common stock and 40.0 percent cash." Anchor shareholders who elected stock consideration would receive 3.5505 shares of Old National common stock per Company share.

45.     On January 10, 2016, the Board unanimously approved the Merger Agreement, and the Merger Agreement was executed the following day.

***The Inadequate Proposed Transaction***

46.     Despite the Company's prospects for future growth and success, the Board caused the Company to enter into the Merger Agreement, pursuant to which Anchor will be acquired by Old National for inadequate consideration.

47.     To the detriment of the Company's stockholders, the terms of the Merger Agreement substantially favor Old National and are calculated to unreasonably dissuade potential suitors from making competing offers.

48.     For example, the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the

Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.   Section 6.10(a) of the Merger Agreement states, in relevant part:

> (a) Anchor shall not, and shall cause its Subsidiaries and cause its and their officers, directors, agents, advisors and representatives (collectively, "Representatives") not to, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate inquiries or proposals with respect to, (ii) engage or participate in any negotiations with any person concerning, or (iii) provide any confidential or nonpublic information or data to, or have or participate in any discussions with, any person relating to, any Acquisition Proposal[.] . . . Anchor will, and will cause its Subsidiaries and the Representatives of Anchor and its Subsidiaries to, (A) immediately cease and cause to be terminated any activities, discussions or negotiations conducted before the date of this Agreement with any person other than Old National with respect to any Acquisition Proposal, [and] (B) request and confirm the prompt return or destruction of all confidential information previously furnished with respect to any Acquisition Proposal[.]

49.   Section 6.10(a) of the Merger Agreement goes on to state that Anchor shall "not terminate, waive, amend, release or modify any provision of any confidentiality or standstill agreement with respect to any Acquisition Proposal, and shall enforce the provisions of any such agreement."

50.   Section 6.10(a) of the Merger Agreement further provides that the Company must advise Old National, within twenty-four hours, of any proposals or inquiries received from other parties, including, *inter alia*, the material terms and conditions of the proposal:

> Anchor will promptly (and in any event within twenty-four (24) hours) advise Old National following receipt of any Acquisition Proposal or any inquiry which would reasonably be expected to lead to an Acquisition Proposal, and the substance thereof (including the terms and conditions of such inquiry or Acquisition Proposal), and will promptly (and in any event within twenty-four (24) hours) advise Old National of any related developments, discussions and negotiations on a current basis, including any amendments to or revisions of the terms of such inquiry or Acquisition Proposal.

51.     Significantly, the Merger Agreement does not contain a "fiduciary out" provision that would permit the Board to terminate the Merger Agreement if failing to do so would constitute a breach of the Individual Defendants' fiduciary duties.  Thus, even if the Board receives a superior acquisition proposal, the Board cannot terminate the Merger Agreement.

52.     The Merger Agreement also contains a "force the vote" provision in Section 6.4(a) that requires the Board to submit the Proposed Transaction to a stockholder vote even if the Board recommends against the Proposed Transaction.

53.     Further locking up control of the Company in favor of Old National is Section 8.2 of the Merger Agreement, which contains a provision for a "termination fee" of $15 million, payable by the Company to Old National under certain circumstances.  Anchor may also be required to reimburse "all of Old National's actual and reasonably documented out of pocket fees and expenses."

54.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

55.     Furthermore, certain of the Company's directors and officers stand to receive significant benefits and, thus, have reason to support the Proposed Transaction.

56.     For example, according to the Registration Statement, the Company's executive officers may retain their employment positions following the consummation of the Proposed Transaction.

57.     Additionally, as a result of the Proposed Transaction, the Company's executive offers stand to receive over $8.53 million in golden parachute compensation, with Individual Defendant Bauer alone to receive $3,090,435.

58.     The consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate because, among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

59.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's business, and future growth in profits and earnings.

60.     As a result, defendants have breached their fiduciary duties that they owe to the Company's public stockholders because the stockholders will not receive adequate value for their Company common stock in the Proposed Transaction.

***The Materially Incomplete and Misleading Registration Statement***

61.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.  As discussed below and elsewhere herein, the Registration Statement omits material information that must be disclosed to Anchor's stockholders to enable them to render an informed decision with respect to the Proposed Transaction.

62.     The Registration Statement omits material information with respect to the process and events leading up to the Proposed Transaction, as well as the opinions and analyses of the Company's financial advisor, J.P. Morgan.  This omitted information, if disclosed, would significantly alter the total mix of information available to Anchor's stockholders.

63.     For example, while the Registration Statement states that "certain of Anchor's executive officers may continue in employment with Old National following the consummation of the Merger[,]" the Registration Statement fails to disclose the timing and nature of all communications regarding future employment or directorship of Anchor's officers and directors, including who participated in all such communications, as well as whether any agreements have been reached regarding post-transaction employment or directorships.

64.     With respect to Anchor's financial projections, the Registration Statement only discloses net income and total assets for years 2016-2026.  The Registration Statement fails to disclose the remaining financial projection line items available for Anchor for each of those years, including, but not limited to, EPS, dividends per share, and tangible book value per share.

65.     The Registration Statement fails to disclose Old National's financial projections, despite the fact that a majority of the merger consideration is Old National common stock.

66.     The Registration Statement fails to disclose the estimated amount and timing of the cost savings and related expenses and synergies expected to result from the Proposed Transaction.

67.     With respect to J.P. Morgan's *Anchor Public Trading Multiples Analysis*, the Registration Statement fails to disclose the individual multiples for each of the selected companies observed by J.P. Morgan in its analysis, including price/adjusted 2016E EPS, price/adjusted tangible book value per share ("TBV"), and 2016E adjusted return on average tangible common equity ("ROATCE").

68.     With respect to J.P. Morgan's *Precedent Transactions Analysis*, the Registration Statement fails to disclose the multiples for each of the selected transactions observed by J.P. Morgan in its analysis, including next twelve months ("NTM") EPS.

69.     With respect to J.P. Morgan *Old National Public Trading Multiples Analysis*, the Registration Statement fails to disclose the multiples for each of the selected companies observed by J.P. Morgan in its analysis, including price/2016E EPS, price/TBV, and 2016E ROATCE.

70.     Additionally, the Registration Statement fails to disclose material information regarding the process leading to the Proposed Transaction, including: (i) what prompted the

Board to consider strategic alternatives in February 2015; (ii) how many parties J.P. Morgan contacted in early 2015, as discussed at the July 29 and August 26 Board meetings; (iii) the results of J.P. Morgan's outreach to parties in July and August 2015, as discussed at the July 29 and August 26 Board meetings; (iv) whether the confidentiality agreements entered into in October and November 2015 contained standstill and/or "don't ask, don't waive" provisions; (v) the terms of the indications of interest received by Anchor in December 2015, including the amount and type of consideration offered; (vi) whether Anchor made counteroffers to Old National's and Party B's indications of interest; and (vii) the reasons Party B "would no longer pursue a strategic transaction with Anchor."

## COUNT I

### (Individual Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Anchor)

71.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Anchor is liable as the issuer of these statements.

73.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

74.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

75.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable shareholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to shareholders.

76.     The Registration Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

77.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

78.     Because of the false and misleading statements in the Registration Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### (Individual Claim for Violation of Section 20(a) of the 1934 Act Against the Individual Defendants and Old National)

79.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

80.     The Individual Defendants and Old National acted as controlling persons of Anchor within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Anchor and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

81.     Each of the Individual Defendants and Old National was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

82.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Registration Statement.

83.     Old National also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

84.     By virtue of the foregoing, the Individual Defendants and Old National violated Section 20(a) of the 1934 Act.

85.     As set forth above, the Individual Defendants and Old National had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## COUNT III

**(Breach of Fiduciary Duties Against the Individual Defendants)**

86.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

87.     As members of the Company's Board, the Individual Defendants have fiduciary obligations to: (a) undertake an appropriate evaluation of Anchor's net worth as a merger/acquisition candidate; (b) take all appropriate steps to enhance Anchor's value and attractiveness as a merger/acquisition candidate; (c) act independently to protect the interests of the Company's public stockholders; (d) adequately ensure that no conflicts of interest exist between the Individual Defendants' own interests and their fiduciary obligations, and, if such conflicts exist, to ensure that all conflicts are resolved in the best interests of Anchor's public stockholders; (e) actively evaluate the Proposed Transaction and engage in a meaningful auction with third parties in an attempt to obtain the best value on any sale of Anchor; and (f) disclose all material information to the Company's stockholders.

88.     The Individual Defendants have breached their fiduciary duties to plaintiff and the Class.

89.     As alleged herein, the Individual Defendants have initiated a process to sell Anchor that undervalues the Company. In addition, by agreeing to the Proposed Transaction, the Individual Defendants have capped the price of Anchor at a price that does not adequately reflect the Company's true value. The Individual Defendants also failed to sufficiently inform themselves of Anchor's value, or disregarded the true value of the Company. Furthermore, any alternate acquiror will be faced with engaging in discussions with a management team and Board that are committed to the Proposed Transaction.

90.     As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to plaintiff and the other members of the Class.

91.     Plaintiff and the members of the Class have no adequate remedy at law.

## COUNT IV

### (Aiding and Abetting the Board's Breaches of Fiduciary Duties Against Anchor and Old National)

92.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

93.     Defendants Anchor and Old National knowingly assisted the Individual Defendants' breaches of fiduciary duties in connection with the Proposed Transaction, which, without such aid, would not have occurred.   In connection with discussions regarding the Proposed Transaction, Anchor provided, and Old National obtained, sensitive non-public information concerning Anchor and thus had unfair advantages that are enabling it to pursue the Proposed Transaction, which offers unfair and inadequate consideration.

94.     As a result of this conduct, plaintiff and the other members of the Class have been and will be damaged in that they have been and will be prevented from obtaining fair consideration for their Anchor shares.

95.     Plaintiff and the members of the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying plaintiff as the Class representative and plaintiff's counsel as Class counsel;

B.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to plaintiff and the Class;

D.      Directing defendants to account to plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Directing the Individual Defendants to file a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

F.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

G.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


Dated this 25th day of February, 2016.


**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**WAGNER LAW GROUP, S.C.**

By  *s/K. Scott Wagner*
     K. Scott Wagner (SBN 1004668)
     Anne M. Plichta (SBN 1046849)
     839 N. Jefferson Street, Suite 400
     Milwaukee, WI 53202
     (414) 278-7000

     *Attorneys for Plaintiff*

_____

**RYAN & MANISKAS, LLP**
Richard A. Maniskas
995 Old Eagle School Road, Suite 311
Wayne, PA 19087
(484) 588-5516

## **VERIFICATION**

I, PAUL PARSHALL, hereby verify that I have reviewed the foregoing complaint (the "Complaint") and I have authorized the filing of the Complaint. The statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

Dated: 2/19/2016

PAUL PARSHALL